UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JENNIFER L. GRIFFITH and SARAH CARVER,<br><br>Plaintiffs,<br><br>v.<br><br>ERIC C. CONN, et al.,<br><br>Defendants. | Civil No. 11-157-ART<br><br>**MEMORANDUM OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

In baseball, three strikes means you are out. In law, that is not always true, and the plaintiffs certainly hope that it will not be true in this instance. Thus, they have filed a motion to amend their complaint for the third time. For the reasons below, that motion is granted.

**(I)   Background**

As the Court's previous opinions include a full recitation of the facts, a summary here suffices. *See* R. 153 at 2–5; R. 176 at 1–3. Relators Jennifer Griffith and Sarah Carver allege that Social Security lawyer Eric Conn conspired with Administrative Law Judge ("ALJ") David Daugherty to manipulate the assignment of disability cases and grant disability benefits to undeserving claimants. As part of their scheme, Conn would notify Daugherty when his clients filed claims, R. 63 ¶¶ 52–54, and Daugherty would then assign himself those cases, *id.* ¶¶ 62, 64. The relators list several examples of cases that Daugherty allegedly misappropriated. *See id*. ¶¶ 70, 71. Daugherty would then conduct "sham

proceedings" or in some cases simply grant benefits without a hearing. *Id.* ¶¶ 73–83. After his clients received benefits, Conn submitted Forms 1560 and 1696 to the Social Security Administration ("SSA") to receive his fees for his representation. *Id.* ¶ 72. Griffith and Carver also allege that doctors David P. Herr, Bradley Adkins, and Srinivas Ammisetty worked with Conn to create false medical records to support the disability claims. *Id.* ¶¶ 103–05.

On October 11, 2011, Griffith and Carver filed a complaint under the False Claims Act ("FCA"). R. 1; R. 2. The complaint was unsealed on February 19, 2013. R. 18. On December 6, 2013, the relators filed a second amended complaint. R. 63. That complaint contains eight counts, and those counts broadly fall into two categories of alleged FCA liability: (1) Conn's clients' applications for Social Security benefits, which Daugherty granted, were false or fraudulent, and (2) Conn's requests for representative fees in those matters were also false or fraudulent. *Id*. ¶¶ 138–42, 148–64.

Conn and the other defendants (taken together as "Conn") first filed a motion to dismiss for lack of subject-matter jurisdiction under the public-disclosure bar, arguing that the relators did not voluntarily provide information to the government before filing suit as required by the FCA. *See, e.g*., R. 137-1. The Court held that, for claims before March 23, 2010, the public-disclosure bar precluded only Carver's claims because her disclosures while an employee of the SSA were compelled by the agency's employment policies. R. 153 at 12–15. Griffith's claims could proceed, the Court held, because she voluntarily provided the information after she resigned from the SSA. R. 153 at 16–20.

Conn then filed a motion to dismiss the second amended complaint, arguing that the Court should dismiss for lack of subject-matter jurisdiction under the public-disclosure bar,

2

and that the Court should dismiss for failure to state a claim under Rule 12(b)(6). R. 146; R. 156; R. 158; R. 160; R. 162. The Court denied that motion to the extent that it was based on public-disclosure grounds. *See* R. 176. The Court granted the motion in part, however, on 12(b)(6) grounds. *Id.* The relators had failed to allege fraud with particularity, the Court held, and thus most of their claims had to be dismissed. There were only two exceptions: the allegations in Count 1 of the second amended complaint relating to Conn's statements on Forms 1560 and 1696 regarding his resignation from the Veterans Court; and the relators' conspiracy claim in Count 7. *See* R. 176 at 42. The Court dismissed all the other claims in the second amended complaint—Counts 2, 3, 4, 5, 6, 8 and part of Count 1—but did so without prejudice. *Id.* The relators have now filed a motion asking the Court for leave to file a Third Amended Complaint. R. 190.

**(II)  Analysis**

Under Rule 15, the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). That said, the Court may deny leave to amend if the amendment would cause "undue delay," "undue prejudice to the defendants," or if the amendment would be "futile." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010). In the Third Amended Complaint, the relators seek to do three things. First, they wish to replead the claims that the Court has already dismissed. *See* R. 190-2 at 1–73. Second, they wish to add Counts VIII and IX, both of which allege that Conn violated the FCA with respect to his requests for representation fees. *See* R. 190-2 at 74–77. Third, they wish to add Count X, which alleges that Conn bribed an ALJ. *See* R. 190-2 at 78–79.

### a. Whether Conn would be prejudiced by allowing the relators to replead counts that the Court has already dismissed.

Conn first argues that he will be prejudiced if the Court allows the relators file a Third Amended Complaint.  Specifically, Conn points out that "all but one of the Counts previously dismissed by the Court have been re-inserted into the Third Amended Complaint."  R. 195 at 4.  As a result, Conn says, he will again have to "devote time and resources to demonstrating why those Counts cannot pass muster under the applicable rules." *Id.*  Thus, Conn argues, allowing the relators to amend the complaint would prejudice him. In response, the relators say that the proposed Complaint "repleads counts the Court has dismissed not in order to revive them, as Conn asserts, but to preserve them for possible appeal."  R. 199 at 2.

The relators are mistaken: they do not need to replead those counts to preserve them for appeal—the Court's previous dismissal preserved those counts for appeal.  *See Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 618 (6th Cir. 2014).[1]  Nevertheless, in the event that the relators do appeal, it will be helpful for the Court of Appeals to have the dismissed counts and the retained counts together in a single document.  Thus, there is some value in allowing the relators to include the already dismissed counts in their amended complaint.

---

[1] The relators argue that *Clark v. Johnston* undermines this rule.  *See Clark v. Johnson*, 413 F. App'x 804, 811–12 (6th Cir. 2011).  Specifically, they argue that, according to *Clark*, a party must replead previously dismissed counts in a complaint to preserve those counts for appeal.  In *Clark*, the plaintiff "did not clearly indicate that he intended his amended pleading to supplement, rather than supersede, his original pleading."  Thus, the circuit held, "it was appropriate for the district court to rely solely on the amended pleading in making its rulings." *Clark v. Johnston*, 413 F. App'x 804, 812 (6th Cir. 2011).  As far as the Court can tell, however, that case did not involve the situation at issue here, where the Court previously dismissed several counts in a complaint, and the plaintiffs then attempted to cure the defects by filing an amended complaint.  *Clark* is therefore distinguishable on its facts, and the usual rule—the one described in *Hayward*—seems to apply.

4

The solution seems to be as follows: The Court will allow the relators to include the dismissed counts in the Third Amended Complaint. But the Court will then dismiss those counts *sua sponte* at the end of this Order (for the same reasons previously given) since the relators admit they have not changed those counts. In this way, the relators will not be forbidden from amending their complaint simply because they included the dismissed counts. And Conn will not have to do anything in response. Hence he will not be prejudiced.

### b. Whether the Third Amended complaint will cause undue delay.

Second, Conn argues that the Third Amended Complaint will cause undue delay. In support of that argument, he points out that "the parties have [already] entered into discovery on the allegations remaining in the Second Amended Complaint," that "discovery cannot proceed with the Second Amended Complaint if the Counts [at] issue have not been determined," and that the information contained in the new counts "has been readily available to [the] [r]elators for months." R. 195 at 3–4.

Although it is true that discovery began in early September, the relators contend that very little discovery has been taken thus far. The parties seemed to confirm that this was true during the conference call on October 30 of this year, when both parties agreed that a privilege ruling would be necessary before much discovery could be completed.[2] *See* R. 197 at 2 (minute entry order); R. 202 (motion in limine). Given that little discovery has occurred thus far, allowing the relators to file a Third Amended Complaint would not cause "undue delay."

---

[2] The Court has not yet ruled on the motion in limine, R. 202. The relators recently filed a response, R. 204, and the Court is still awaiting Conn's reply.

5

### c. Whether it would be "futile" for the relators to amend their complaint to include Counts VIII and IX.

Third, Conn argues that it would be futile for the relators to amend their complaint to include "Count VIII—Submission of false claims for fees" and "Count IX—Use of false records for fees." R. 190-2 at 74; *id.* at 76. An amendment is "futile" if "the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). "If a proposed amendment is not *clearly* futile," however, then the court should allow the amendment. *Wright & Miller*, 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.) (emphasis added). The proper vehicle to address an amendment that is subject to dismissal—but not *clearly* so—is a standalone motion to dismiss, rather than a motion for leave to amend a complaint. *See id.*

Conn argues that it would be clearly "futile" to allow the relators to amend their complaint to include Counts VIII and IX because, in his view, the relators have not pled fraud in those counts with sufficient particularity. Under Rule 9, a party "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In the context of the False Claims Act, that means a plaintiff must allege four things: first, "the time, place and content of the alleged misrepresentation"; second, "the fraudulent scheme"; third, the "defendant's fraudulent intent"; and, finally, "the resulting injury." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011). The plaintiff must also "identify with specificity characteristic examples that are illustrative of the class of all claims covered by the fraudulent scheme." *Id.* at 470 (internal quotation marks omitted).

The relators' amended complaint alleges that, "between January 2007 and May 2011," Conn submitted claims that were "false or fraudulent" because they included "bogus RFC forms." R. 190-2 at 48–50. The forms were "bogus," the complaint goes on to say, because "they were selected randomly (or by rotation) and, therefore, their diagnostic information bore no relationship to the actual medical or psychological condition of the clients." *Id.* at 49. The complaint therefore alleges "the time, place and content of the alleged misrepresentation" and adequately describes "the fraudulent scheme." *Chesbrough*, 655 F.3d at 467. Conn does not dispute whether the relators have properly alleged "the defendant's fraudulent intent" or "resulting injury." *Id.* And the complaint details two "characteristic examples"—namely "Mrs. A" and "Mr. B"—whose cases "illustrat[e] the class of all claims covered by the fraudulent scheme." *Id.*; R. 190-2. As for Mrs. A, the complaint says that Conn "submitted a bogus RFC form [on her behalf] but withheld her actual medical records from [the] SSA." R. 190-2 at 49–50. As for Mr. B, the complaint says that Conn "submitted a bogus RFC to [the] SSA in his case." *Id.* at 50. Thus, it seems that the relators have alleged fraud with the particularity that Rule 9(b) requires.

Conn responds in four ways. First, he contends that the fraud allegations are not specific enough. According to Conn, the relators "never explain how or why the RFC form[s]" were "bogus." R. 195 at 5. Nor do the relators explain, Conn goes on to say, "how the alleged failure to turn over any medical records to the SSA could be considered a violation of the False Claims Act." *Id.* at 5–6. But the relators *do* explain how why the RFC forms were "bogus." They were "bogus," the proposed Complaint alleges, because the "diagnostic information [contained therein] bore no relationship to the actual medical or psychological condition of the clients." R. 190-2 at 49. And the "alleged failure to turn over

7

any medical records" is simply not the fraud that the proposed Complaint alleges. Rather, the alleged fraud is that Conn turned over fraudulent records in lieu of the genuine ones. Thus, it is no surprise that the proposed Complaint nowhere explains *why* a mere failure to turn over the medical records would be fraud: the proposed Complaint never says that it would, in fact, be fraudulent to do so. In sum, Conn is raising the bar a bit too high here; he demands more specificity than Rule 9(b) requires at the pleading stage. And he misstates the nature of the fraud that the relators allege. As for the fraud that the relators *do* in fact allege, they have pleaded fraud specifically enough.

Second, Conn quibbles with the factual basis underlying the fraud allegations. He says that the relators have mischaracterized the notice that the SSA provided to the claimants. In the proposed Complaint, the relators allege that "[t]he Agency notified Mrs. A in 2015 that it had set her claim for redetermination for reasons of fraud after setting aside Conn's template form and determining that the remaining record evidence was insufficient to establish her eligibility." R. 190-2 at 5. Conn says that statement is untrue. In Conn's view, "[t]hat notice does not actually state that fraud was determined to have occurred in any of the claimant's cases. Instead it states: '[t]here was reason to believe fraud was involved in certain cases[.]'" R. 195 at 6. Conn further points out that many of the claimants have argued in related cases that their claims were not fraudulent ones. *See id.* ("When the 1,787 claimants themselves have represented to this Court that there are no details of fraud involving Conn, it is difficult to see how [r]elators can make a contrary argument in this case."). But that fact-based quibbling misunderstands the question before the Court, which is only whether the relators have alleged fraud in their complaint with sufficient particularity. If Conn wishes to dispute the facts that support that fraud claim, then he may file a motion

8

for summary judgment. At this stage, however, the Court must take as true the allegations in the amended complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Third, Conn argues that the public-disclosure bar applies to these counts. Conn points out that "the RFC forms allegedly at issue were submitted in 2009." R. 195 at 10. Thus, he argues, "the conduct complained of occurred before March 23, 2010," which in his view means that "the pre-[Affordable Care Act] public-disclosure bar applies to those claims." *Id.* But there is an exception to the usual public-disclosure bar. Indeed, as Conn himself admits, a relator can bring a claim notwithstanding the bar if she is an "original source." R. 195 at 11 (citing 31 U.S.C. § 3730(e)(4)(B)). The Court has already explained that, since Griffith has "direct and independent knowledge of a substantial or essential portion of the underlying fraud scheme," she is an "original source" for these purposes. R. 176 at 12.

Indeed, Griffith's contribution to the complaint is substantial. She had information about how the scheme worked, including how Daugherty manipulated the SSA's computer system to take Conn's cases from other ALJs and, in other situations, took the paper files of Conn's cases. R. 176 at 14 (citing R. 63 ¶¶ 64, 69). She has direct and independent knowledge of Conn's submission of fees forms, and she was employed through the final disposition of each case. *Id.* (citing R. 63 ¶ 70). That Griffith does not have independent knowledge of each instance of fraud is—as the Court has likewise explained—irrelevant to whether she is an original source and hence to whether the public-disclosure bar applies here. *See id.*; *see also* 31 U.S.C. § 3730(e)(4)(B); *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 472 (2007).

Fourth, Conn argues that these claims do not in fact allege a violation of the False Claims Act. Specifically, Conn points out that "[r]epresentative fees in [social-security] and

9

[disability] cases are paid from claimants' past-due benefits." R. 195 at 12. "Once an order is entered awarding benefits," Conn says, "legal ownership of those funds goes to the claimants," who then pay fees to their legal representatives. *Id.* Thus, Conn argues, the fees at issue are not "government" funds and hence a person does not violate the False Claims Act by falsely obtaining such fees. *Id.* As a result, Conn concludes, a plaintiff cannot state a claim under the False Claims Act by asserting only that a defendant's lawyer falsely obtained representative fees. Hence it would be futile, in his view, to allow the relators to amend their complaint to include Counts VIII and IX.

That is indeed a creative argument, and it might well prove to be a valid one. But a court should forbid a plaintiff to amend a complaint—on futility grounds, at least—only if the amendment is "clearly" futile. *Thompson v. Poindexter*, 798 F.2d 471, 1986 WL 17207, at *1 (6th Cir. 1986); *see also Wright & Miller*, 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.) ("If a proposed amendment is not clearly futile, then denial of leave to amend is improper."). Here, Conn has never before argued that the fees at issue are not "government" funds. And he certainly had the opportunity to do so. After all, several of the counts in the Second Amended Complaint alleged fraud-by-fee-seeking. *See* R. 63 (Second amended complaint); R. 176 (discussing these counts when evaluating Conn's motion to dismiss them). If it was so "clear" that those counts did not state a claim under the FCA, one might ask, then why did Conn not make that argument before? The Court therefore disagrees with Conn that it would be "clearly futile" to allow the relators to include Counts VIII and IX.

That said, Conn is of course free to argue later—in a motion to dismiss, perhaps—that the relators' fraud-by-fee-seeking allegations do not state a valid claim under the False Claims Act. But the Court would prefer to tackle that argument later and head-on (with full

10

briefing by both sides) rather than slapping at it sideways now while addressing a motion for leave to file an amended complaint. The relators therefore may amend their complaint to include Counts VIII and IX.

### d. Whether it would be futile to allow the relators to amend their complaint to include Count X.

Finally, Conn argues that it would be futile to allow the relators to amend their complaint to include "Count X—Submission of false claim—Bribery of an ALJ." In this count, the relators allege that Conn violated the False Claims Act by "knowingly present[ing] or caus[ing] to be presented, false or fraudulent claims for representative fees for payment or approval[.]" R. 190-2 at 78 (citing 31 U.S.C. § 3729(a)(1)(A)). Specifically, the relators say that the claims for fees were false or fraudulent because Conn "paid bribes or kickbacks to Daugherty," thus violating a Social Security regulation that forbids such conduct. R. 190-2 at 78 (citing 20 C.F.R. §§ 404.1740(c)(6), 416.1540(c)(6)). The relators further allege that, "[h]ad responsible officials of the SSA known the truth (*i.e.*, that Conn had bribed Daugherty as a component in the scheme to defraud the [a]gency), they would have disapproved the claims." R. 190-2 at 79.

Conn argues that it would be futile to allow the relators to include this Count. Specifically, he argues that the complaint lacks the "information supporting this Count" and "accordingly cannot meet the heightened pleading standard required by Rule 9(b)." R. 195 at 12. That is not true. Count X incorporates by reference many of the preceding paragraphs, including paragraphs 114–15. R. 190-2 at 75. There, the relators allege that "Conn made substantial monthly cash withdrawals" and then "periodically made cash payments to Daugherty [an ALJ], who caused the money to be deposited in bank accounts

11

controlled by himself, his wife, and his daughter." R. 190-2 ¶¶ 114–15. It is hard to imagine how the relators could have pled with greater specificity the claim of "Bribery of an ALJ."

Conn also argues that the relators "do not purport to have any additional information supporting this Count and accordingly cannot meet the heightened pleading standards required by Rule 9(b)." At the pleading stage, however, the plaintiff need not come forward with evidence or other "information" supporting a claim; instead the Court must accept the facts alleged in the complaint as true. *See generally Iqbal*, 556 U.S. at 678. If it turns out that the relators truly lack any evidence to back up their allegations, then Conn may file a motion for summary judgment at the appropriate time. As it stands, though, the relators have at least *alleged* the facts underlying this count with the particularity that Rule 9(b) requires. Hence it would not be "futile" for them to amend their complaint to include Count X.

Accordingly, it is **ORDERED** as follows:

(1)   The relators' motion for leave to file a Third Amended Complaint, R. 190, is **GRANTED**.

(2)   The Clerk of the Court shall docket the Proposed Third Amended Complaint, R. 190-2, as the relators' Third Amended Complaint.

(3)  The Counts that the Court has already dismissed in its previous order—Counts 2, 3, 4, 5, 6 and all parts of Count 1 except those allegations related to Conn's statements on Forms 1560 and 1696 regarding his resignation from the Veterans Court, *see* R. 176 at 42—are **DISMISSED WITHOUT PREJUDICE**.

This the 11th day of December, 2015.

Signed By:
*Amul R. Thapar*  AT
United States District Judge