UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JENNIFER L. GRIFFITH and SARAH CARVER,<br><br>Plaintiffs,<br><br>v.<br><br>ERIC C. CONN, et al.,<br><br>Defendants. | Civil No. 11-157-ART<br><br>**MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In litigation, tactical decisions have risks. When a party decides to invoke the Fifth Amendment in a civil case, one risk is that the Court might draw an adverse inference against that party. Here the defendant, Eric Conn, asks the Court to mitigate that risk for him up front via an order *in limine*. Specifically, he asks the Court to promise him that, if he takes the Fifth, the Court will not draw an adverse inference against him. As Conn correctly points out, a court must decide that it is "fair" to draw an adverse inference against a party who has invoked his Fifth Amendment rights before the court does so. And thus Conn is correct that the relators are not automatically entitled to an adverse inference. But Conn cites no authority for the proposition that the Court should rule *now* that the relators will *never* be entitled to such an inference. He and his employees may refuse to answer questions on the grounds that they might incriminate themselves. If they do so, the Court might later draw an adverse inference, or it might not. For the time being, however, Conn's motion *in limine* is denied without prejudice.

I.

As the Court's previous opinions include a full recitation of the facts, a summary here suffices. *See* R. 206 at 1–3; R. 176 at 1–3; R. 153 at 2–5. Relators Jennifer Griffith and Sarah Carver allege that Social Security lawyer Eric Conn conspired with Administrative Law Judge ("ALJ") David Daugherty to manipulate the assignment of disability cases and grant disability benefits to undeserving claimants. As part of their scheme, Conn would notify Daugherty when his clients filed claims, R. 63 ¶¶ 52–54, and Daugherty would then assign himself those cases, *id.* ¶¶ 62–65. The relators list several examples of cases that Daugherty allegedly misappropriated. *See id.* ¶¶ 70, 71. Daugherty would then conduct "sham proceedings" or in some cases simply grant benefits without a hearing. *Id.* ¶¶ 73–83. After his clients received benefits, Conn submitted Forms 1560 and 1696 to the Social Security Administration ("SSA") to receive his fees for his representation. *Id.* ¶ 72. Griffith and Carver also allege that doctors David P. Herr, Bradley Adkins, and Srinivas Ammisetty worked with Conn to create false medical records to support the disability claims. *Id.* ¶¶ 103–05.

On October 11, 2011, Griffith and Carver filed a complaint under the False Claims Act ("FCA"). R. 1; R. 2. The complaint was unsealed on February 19, 2013. R. 18. On December 6, 2013, the relators filed a second amended complaint. R. 63. That complaint contains eight counts, and those counts broadly fall into two categories of alleged FCA liability: (1) Conn's clients' applications for Social Security benefits, which Daugherty granted, were false or fraudulent, and (2) Conn's requests for representative fees in those matters were also false or fraudulent. *Id.* ¶¶ 138–42, 148–64.

Conn and the other defendants (taken together as "Conn") first filed a motion to dismiss for lack of subject-matter jurisdiction under the public-disclosure bar, arguing that the relators did not voluntarily provide information to the government before filing suit as required by the FCA. *See* R. 137-1. The Court held that, for claims before March 23, 2010, the public-disclosure bar precluded only Carver's claims because her disclosures while an employee of the SSA were compelled by the agency's employment policies. R. 153 at 12–15, 20–21. Griffith's claims could proceed, the Court held, because she voluntarily provided the information after she resigned from the SSA. *Id.* at 16–20.

Conn then filed a motion to dismiss the second amended complaint, arguing that the Court should dismiss for lack of subject-matter jurisdiction under the public-disclosure bar, and that the Court should dismiss for failure to state a claim under Rule 12(b)(6). R. 146; R. 150; R. 156; R. 158; R. 160; R. 162. The Court denied that motion to the extent that it was based on public-disclosure grounds. *See* R. 176 at 4–17. The Court granted the motion in part, however, on 12(b)(6) grounds. *Id.* at 22–34. The relators had failed to allege fraud with particularity, the Court held, and thus most of their claims had to be dismissed. *Id.* There were only two exceptions: the allegations in Count 1 of the second amended complaint relating to Conn's statements on Forms 1560 and 1696 regarding his resignation from the Veterans Court; and the relators' conspiracy claim in Count 7. *See id.* at 19–22, 34–35. The Court dismissed all the other claims in the second amended complaint—Counts 2, 3, 4, 5, 6, 8, and part of Count 1—but did so without prejudice. *Id.* at 42. The relators then filed a motion asking the Court for leave to file a third amended complaint, R. 190, which the Court granted, R. 206.

Around the same time, Conn filed his motion *in limine* about the adverse inference. R. 202. In support of that motion, Conn alleges that the relators have drummed up criminal charges against him. He says that they complained to the SSA's Inspector General, gave information to a reporter from the *Wall Street Journal*, appeared as "star witnesses" in a Senate hearing, "publicly discussed their desire to see Conn face prosecution," and grumbled publicly when a federal prosecutor in West Virginia declined to prosecute him. R. 202 at 2. As a result of these machinations, Conn says, "prosecutors from [the Department of Justice headquarters] have re-opened the investigation." R. 202 at 3.

In Conn's view, the relators' interest in the criminal case has always been a disingenuous sideshow. Their real goal all along, he says, was to force Conn to assert his Fifth Amendment rights in this civil case, and thereby allow the Court to draw an adverse inference against him. This is "unfair[]," Conn says. *Id.* at 4. Thus he asks the Court to assure him, via an order *in limine*, that it will not draw an adverse inference against him if he exercises his right against self-incrimination. R. 202 at 7.

II.

A person has the right to assert the Fifth Amendment at any time he pleases. He may do so "in civil as well as criminal proceedings," and he may do so "at trial [and] during the discovery process as well." *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994). But it is equally true that "in proper circumstances[,] silence in the face of accusation is a relevant fact not barred from evidence by the [Fifth Amendment]." *Baxter v. Palmigiano*, 425 U.S. 308, 391 (1976). For example, the law generally "does not forbid adverse inferences against civil litigants who refuse to testify on Fifth Amendment grounds." *In re Carp*, 340 F.3d 15, 23 (1st Cir. 2003). Thus, there is simply no constitutional reason why

4

this Court—in this civil case—may not draw an adverse inference against Conn if he refuses to answer the relators' questions, either at trial or during discovery.

Indeed, as Conn freely admits, the decision whether to draw the inference lies within the Court's discretion. R. 202 at 6. He argues only that the Court should choose not to draw an adverse inference. In support of that argument, he notes that the law "does not mandate" an adverse inference. *Id.* at 4 (quoting *In re Carp*, 340 F.3d at 23). He points out that there is no "blanket rule that allows adverse inferences to be drawn from invocations of the privilege against self-incrimination under all circumstances in the civil context." *Id.* (quoting *Doe ex rel. Rudy–Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000)). He highlights language in several cases suggesting that, even in a civil case, a court should "carefully weigh [the defendant's] interest[] against self-incrimination with [the plaintiff's] entitlement to equitable treatment." *Id.* (quoting *Orlowski v. Bates*, No. 2:11-CV-01396, 2015 WL 6159494, at *6 (W.D. Tenn. Oct. 20, 2015)); *id.* (quoting *Graystone Nash*, 25 F.3d at 192 ("Because the [Fifth Amendment] privilege is constitutionally based, the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side.")). And he reminds the Court that, "[b]ecause of the potential for 'lawyer abuse' when the examining attorney effectively testifies for the witness who is invoking the privilege, the court has discretion under Rule 403 to control the way in which the invocation of the privilege reaches the jury." *Id.* at 5 (quoting *In re WorldCom, Inc. Sec. Litig.*, No. 02-CIV-3288 DLC, 2005 WL 375315, at *5 (S.D.N.Y. Feb. 17, 2005)).

All of those points are valid ones. If Conn or his employees do indeed take the Fifth, and if the relators ask the Court to draw an adverse inference, then the Court will consider each of those issues: for example, whether the relators have engaged in "lawyer abuse;"

5

whether the defendant's "interest against self-incrimination" outweighs the relators' "entitlement to equitable treatment;" and whether "the detriment" to Conn is "necessary" to prevent unfair and unnecessary prejudice to the other side. And if allowing the inference is unfair, then the Court will choose not to allow it.

But that is quite a lot of "ifs." And the question at the motion-*in-limine* stage is simply whether the evidence would be "clearly inadmissible on all potential grounds." *Smith v. Walle Corp.*, No. CIV.A. 5:13-219-DCR, 2014 WL 5780959, at *1 (E.D. Ky. Nov. 5, 2014) (internal quotations omitted). If there is some ground on which the evidence will be admissible, however, then the court should not exclude the evidence *in limine* and should instead reserve ruling until trial. *Id.* (citing *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)). Thus, if there is any circumstance in which an adverse inference would be valid, the Court must deny Conn's motion *in limine*.

Here, Conn has not come close to showing that an adverse inference would never be valid. As things stand now, the Court simply lacks the information to determine whether an adverse inference would be "fair." For example, how could the Court possibly "balance the interests of the party claiming protection against self-incrimination and the adversary's entitlement to equitable treatment?" The Court has no idea what the relators' equitable interest would be. For another example, how could the Court decide whether the relators have engaged in lawyer abuse when their lawyers have not yet posed a single question to Conn? And how could the Court determine what "detriment" to Conn is "necessary" for fairness purposes without viewing the testimony of Conn and Conn's employees in full context?

The answer seems to be a straightforward one: the Court cannot do any of those things right now. For that reason, perhaps, Conn has cited no case in which a court has declared *ex ante* that it would not draw an adverse inference against a defendant who says that he plans to assert his Fifth Amendment rights in the future. To do so would give a defendant not only a Fifth Amendment shield but also a sword. Specifically, the defendant could refuse to answer questions and thereby prevent the plaintiff from acquiring necessary information without fear of any consequence. The Constitution does not grant this weapon to a defendant in a civil case.

In sum, Conn and his employees are free to assert their rights as they see fit. If they choose to do so, the Court will decide at a later date whether to draw an adverse inference. For the time being, however, it is **ORDERED** that Conn's motion *in limine*, R. 202, is **DENIED WITHOUT PREJUDICE**.

This the 7th day of January, 2016.

Signed By:
*Amul R. Thapar*  AT
United States District Judge