IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. Jennifer L. GRIFFITH and Sarah CARVER, <br><br> Plaintiffs, <br><br> v. <br><br><br> Eric C. CONN, ERIC CONN, P.S.C., and David B. DAUGHERTY, <br><br> Defendants. | Civil No. 7:11-CV-157-ART |

**UNITED STATES' MOTION TO PARTIALLY INTERVENE FOR GOOD CAUSE**

The United States of America, through undersigned counsel, and pursuant to 31 U.S.C. § 3730(c)(3) and Federal Rule of Civil Procedure 24(b), respectfully requests that the Court permit the United States to intervene for good cause in this *qui tam* action against Eric C. Conn and Eric Conn, P.S.C. (collectively, the "Conn Defendants") as to Counts I, VIII and IX of Relators' Third Amended Complaint.[1] Count I alleges that the Conn Defendants knowingly submitted to the Social Security Administration (SSA) false claims (SSA Forms 1696, 1699 and 1560) for payment of representative fees. Counts VIII and IX relate to allegations that the Conn Defendants knowingly submitted, caused to be submitted, made or used false Residual

---

[1] At this time the United States is not seeking to intervene for good cause against David B. Daugherty on any claim or against the Conn defendants with respect to Counts VII or X of Relators' Third Amended Complaint.

1

Functional Capacity forms in connection with certain claims that are currently subject to SSA's redetermination process under 42 U.S.C. §§ 405(u)(l), 1383(e)(7)(A)(i).

In support, the United States shows as follows:

## STATEMENT OF THE CASE

**The Relators' Allegations**

1. On October 11, 2011, Relators Jennifer L. Griffith and Sarah Carver (collectively, "Relators") filed this *qui tam* action under the False Claims Act in the United States District Court for the Eastern District of Kentucky. *See* Dkt. 1; *see also* Dkt. 18 (unsealing Relators' complaint).

2. Relators' Complaint alleged that the Conn Defendants, and others, conducted a scheme to fraudulently obtain Social Security disability benefits for clients represented by the Conn Defendants. Under the scheme alleged in the Complaint, Defendant David B. Daugherty, then an SSA administrative law judge, diverted Conn Defendants' claims to his own docket, conducted cursory proceedings, and approved an extraordinarily high number of Conn Defendants' claims. Based on these allegations, Relators asserted two substantive FCA claims (Counts I and II) and a claim for conspiracy to violate the FCA (Count III).

3. On June 26, 2013, Relators filed an Amended Complaint asserting additional factual allegations but adding no additional legal claims. *See* Dkt. 31. These factual allegations included that in 2002, Conn resigned from practice before the United States Court of Appeals for Veterans Claims while under investigation for professional misconduct.

4. On December 6, 2013, Relators filed a Second Amended Complaint asserting four additional FCA claims (new Count III through Count VI) and one claim for FCA retaliation (Count VIII). The Second Amended Complaint also added additional factual allegations and

2

maintained Relators' original FCA claims (Counts I and II) and FCA conspiracy claim (Count VII). *See* Dkt. 63. Relators alleged that on the SSA Forms 1560, 1696, and 1699, which are required for Conn to collect fees and be directly paid by SSA for successful claims, Conn misrepresented his adherence to Social Security regulations by failing to disclose his 2002 resignation from practice before the United States Court of Appeals for Veterans Claims while under investigation for professional misconduct.

5. On October 1, 2015, Relators filed a Motion for Leave to File a Third Amended Complaint. Dkt. 190. Relators sought to add an additional FCA claim based on "1787 claims that the Office of Inspector General referred to the SSA based on a determination that the claims included preprinted template medical evaluations, for which the SSA subsequently determined the evidence was otherwise insufficient to establish the claimant's disability." *Id.* at 3. Relators also sought to re-plead claims the Court previously dismissed and add a claim alleging that Conn bribed Defendant Daugherty. After Defendants opposed the amendment and the United States filed a Statement of Interest pursuant to the Court's order granting it leave to do so, *see* Dkt. 195, 198, 200, 201, on December 11, 2015 the Court granted Relators' Motion permitting the Third Amended Complaint to be filed. Dkt. 206. Relators filed the Third Amended Complaint that same day. Dkt. 207.

**The United States' Continued Involvement in this Matter**

6. On December 13, 2012, the United States filed a Notice with the Court stating that the Government was "not intervening at this time." Dkt. 14 at 1. The United States noted that "[t]he Government's investigation has not been completed" and that "the Government's civil investigation will continue" after filing the Notice. *Id.* On August 9, 2013, the United States filed a Notice of Election to Decline Intervention as to specific claims contained in the Relators'

Amended Complaint. Dkt. 37. "For all other allegations, the United States refers to and incorporates its Notice of the United States that It Is Not Intervening At This Time." *Id*.

      7.      Since those filings, the United States, though not a party, has remained an active participant in this matter. At the Court's request, the United States provided briefing on issues relating to the application of the public disclosure bar. *See, e.g.*, Dkt. 79 and 93. As part of that briefing, the United States notified the Court that it objected to dismissal of claims accruing on or after March 23, 2010, on the basis of the public disclosure bar. Dkt. 93 at 3. In subsequent briefing, the United States further explained that its objection to dismissal "is entirely rational … where the allegations in Relators' complaint, if proven true, would make out an FCA case that would entitle the Government to recover funds." Dkt. 101 at 11. The United States also attended the evidentiary hearing and oral argument on these topics. In addition, the Government has filed two Statements of Interest with the Court on matters relating to the SSA. *See* Dkt. 166, 201. The Government has attended the Court's periodic discovery conferences. The Government continues to fulfill its discovery obligations. After receiving Relators' First Request for Production, the Government engaged in meet-and-confer sessions to negotiate the scope of discovery and initiated steps to begin to produce responsive documents.

      8.      Throughout this process, the United States has also continued to evaluate Relators' claims. As part of this evaluation, the United States has reviewed documents and testimony connected to the Senate Committee of Homeland Security and Governmental Affairs, including the testimony relating to its October 7, 2013 hearing and its publication of its Staff Report "*How Some Legal, Medical, and Judicial Professionals Abused Social Security Disability Programs for the County's Most Vulnerable: A Case Study of the Conn Law Firm.*"

9. In addition, beginning in approximately May 2015, SSA initiated the redetermination of entitlement or eligibility of individuals that SSA's Office of Inspector General (OIG) identified pursuant to 42 U.S.C. § 1320a-8(l). The individuals identified were Conn clients whose claims were adjudicated by Daugherty and other administrative law judges in the Huntington Hearing Office. The redetermination involved a review by other administrative law judges of the claim files to determine whether the evidence supported entitlement to or eligibility for benefits under titles II or XVI of the Social Security Act, or both, at the time of the original allowance. When conducting a redetermination, the administrative law judge must disregard evidence when there is a reason to believe fraud or similar fault was involved in providing that evidence to SSA; in this case, the falsely certified medical evidence submitted by the Conn Defendants. The redetermination proceedings are ongoing and have involved the review of over 1,780 claim files over several months and will continue until the process is complete.

10. In addition, the United States evaluated Relators' allegations in light of the Court's July 27, 2015 Order on defendants' motion to dismiss (Dkt. 176), as well as the Court's December 11, 2015 Order granting Relator's Motion to File a Third Amended Complaint (Dkt. 206).

## ARGUMENT & RELIEF REQUESTED

11. Under the False Claims Act, a relator is permitted to file a civil action on behalf of the United States government. 31 U.S.C. § 3730(b)(1). The relator's complaint is filed *in camera* and shall remain under seal for at least sixty days, subject to court-approved extensions. 31 U.S.C. § 3730(b)(2), (3). Before the intervention deadline, the Government must "proceed with the action, in which case the action shall be conducted by the Government," or "notify the

5

court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action." 31 U.S.C. § 3730(b)(4). On December 13, 2012, the United States notified the Court that it was "not intervening at this time." *See supra* ¶ 3.

12.     The False Claims Act further provides, however, that "the court, without limiting the status and rights of the person initiating the action, may nevertheless permit the Government to intervene at a later date upon a showing of good cause." 31 U.S.C. § 3730(c)(3). Section 3730(c)(3)'s "good cause" requirement is premised on Congress's determination that the "limited opportunity for Government involvement [during the investigation period] could in some cases work to the detriment of the Government's interests." S. Rep. No. 99-345, at 26-27 (*reprinted in* 1986 U.S.C.C.A.N. 5266, at 5291-92).

13.     In defining "good cause" under § 3730(c)(3), courts have considered (1) the public interest, which is "of paramount importance" in the inquiry, (2) whether new evidence probative of the defendant's liability has been discovered, (3) whether intervention will harm the relator's interests, and (4) whether intervention will unfairly prejudice the defendant.[2] *United States ex rel. Stone v. Rockwell Int'l Corp.*, 950 F. Supp. 1046, 1049 (D. Colo. 1996); *United States ex rel. Hall v. Schartzman*, 887 F. Supp. 60, 62 (E.D.N.Y. 1995).

14.     Considering each of these factors, good cause exists to permit the United States to intervene.

    a.     **Public Interest:** The public interest, which the *Rockwell* court said is "of paramount importance" in the good-cause inquiry, favors intervention. *Rockwell*, 950 F. Supp. at 1049 ("This civil action provides an appropriate forum for a public inquiry into the management

---

[2] The United States has not discovered decisions from the Sixth Circuit Court of Appeals, or district courts within this circuit, defining "good cause" under § 3730(c)(3).

of this important [Department of Energy] defense facility and participation in it by the government will add significantly to the completeness and fairness of any trial."). Intervention would further two related public interests: the ethical and transparent administration of the Social Security Disability Insurance (SSDI) and the Supplemental Security Income (SSI) Programs generally, and the ethical and transparent representation of SSDI and SSI claimants. SSDI and SSI are two of the largest social insurance programs administered by the United States government. The public has an interest in ensuring that these taxpayer-funded programs are administered with transparency and integrity. Relatedly, those SSDI and SSI claimants who rely on representation in seeking a statutory right or benefit must have confidence that their representatives will "provide competent assistance" and recognize SSA's authority "to lawfully administer the process." 20 C.F.R. §§ 404, 1740(a), 416.1540(a), *see also* 42 U.S.C. §§ 408, 1383a. In turn, because the public has an interest in payment of fees to representatives, appointed "representatives must be forthright in their dealings with" SSA. 20 C.F.R. §§ 404.1740(a)(2), 416.1540(a)(2). The United States is well-situated to vindicate such interests on the public's behalf.

      b.    **New Evidence:** Following the United States' intervention decisions, new evidence probative of the Defendants' liability has been uncovered and has been reviewed by the United States including, but not limited to, (1) testimony to the Senate Committee by two physicians who provided medical reports to Conn that were submitted to SSA in support of the claims for benefits; (2) testimony to the Senate Committee in the form of declarations by two former employees of Conn's law firm relating to, *inter alia*, the creation of the medical records submitted to SSA in support of the claims for benefits; and (3) the claim files identified in

7

connection with the SSA's continuing redetermination process that provide evidence of the scope of the allegations against Defendants as well as specific examples of alleged wrongdoing.

        c.    **Relators' Interests:** Relators consent to the United States' intervention and thus have determined that intervention sufficiently vindicates their interests.

        d.    **No Unfair Prejudice to Defendants:** Intervention will not unfairly prejudice Defendants by, for example, subjecting them to "duplicative discovery or undue delay." *Schartzman*, 887 F. Supp. at 62. As the Court recently determined in granting Relators' Motion for Leave to File a Third Amended Complaint, "little discovery has occurred thus far," so that no undue delay would result from allowing Relators to file the Third Amended Complaint. Dkt. 201 at 5. A similar finding is compelled here. Defendants have not propounded any discovery on the Government. No depositions have taken place in this action. Defendants have not produced any documents to Relators. Furthermore, the Government's lengthy involvement in this matter— beginning with the investigation of Relators' allegations, continuing with the Government's Notice that its "investigation ha[d] not been completed" and would "continue," and its participation as a third party during the litigation—ensures that intervention will not cause Defendants unfair surprise. Dkt. 141 at 1. Government counsel also advised counsel for the Conn Defendants on December 29, 2015, that the United States was evaluating the case, and similarly advised the parties and the Court during the parties' January 8, 2016 telephone conference; *see Schwartzman*, 887 F. Supp. at 62 ("[T]he defendants have been aware that the Government has been contemplating intervention."). Counsel for the Conn Defendants has advised the United States that they will oppose this Motion.

## CONCLUSION

15.    For the reasons set forth above, the United States respectfully requests that the Court issue an Order permitting the Government's partial intervention in this action for good cause.

Respectfully submitted,

/s/ Patrick Klein
MICHAL L. TINGLE
PATRICK M. KLEIN
Attorneys, Department of Justice
  Civil Division
Post Office Box 261
Ben Franklin Station
Washington, DC 20044
Tel:  (202) 305-2447
Fax:  (202) 514-0280

DATED: February 9, 2016

**Certificate of Service**

I hereby certify that a copy of the foregoing has been served by electronic service upon all parties this 9th day of February, 2016.

/s/ Patrick Klein