UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| JENNIFER L. GRIFFITH, et al., | ) |
| Plaintiffs, | ) Civil No. 11-157-ART-EBA |
| v. | ) |
| ERIC C. CONN, et al., | ) **MEMORANDUM OPINION** |
|  | ) **AND ORDER** |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

To survive a motion to dismiss, any valid theory will do. Here, the relators sued Eric Conn (and his company) for violating the False Claims Act ("the Act"). Conn now moves to dismiss three counts of the complaint on one narrow ground, namely that the relators (in his view) failed to allege that Conn made a "claim" to the government. The thrust of his argument is that the complaint does not allege that his actions harmed the public fisc in any way. Conn views a "call on the public fisc" as a necessary component of a "claim" under the pre-2009 version of the False Claims Act as well as the post-2009 version of the Act. Thus he asks the Court to dismiss the three counts.

Under the revised version of the Act, there are two independent definitions of "claim." One of them is "any request" for "money or property" that is "presented" to the government. That definition of "claim" does not require the relators to show that Conn damaged the public fisc in any way. The old version of the Act, on the other hand, does not define the term "claim" in the context at issue here, and thus the Court must give that word its ordinary definition: "[a] demand for money, property, or a legal remedy to which one

asserts a right." Black's Law Dictionary 301 (10th ed. 2014). This definition, too, does not require the relators to show that Conn's actions damaged the public fisc. Per the terms of the statute—in both the new version and the old one—all that the relators must allege is that Conn "presented" a request or demand to the government for money or property. The relators have done exactly that in their complaint. Hence the complaint alleges that Conn made a "claim" to the government. Conn's motion to dismiss is therefore denied.

I.

As the Court's previous opinions include a full recitation of the facts, a summary here suffices. *See* R. 206 at 1–3; R. 176 at 1–3; R. 153 at 2–5. Relators Jennifer Griffith and Sarah Carver allege that Social Security lawyer Eric Conn conspired with Administrative Law Judge ("ALJ") David Daugherty to manipulate the assignment of disability cases and grant disability benefits to undeserving claimants. As part of their scheme, Conn would notify Daugherty when his clients filed claims, R. 63 ¶¶ 52–54, and Daugherty would assign himself those cases, *id.* ¶¶ 62–65. The relators list several examples of cases that Daugherty allegedly misappropriated. *See id.* ¶¶ 70, 71. Daugherty would then conduct "sham proceedings" or in some cases simply grant benefits without a hearing. *Id.* ¶¶ 73–83. Griffith and Carver also allege that doctors David P. Herr, Bradley Adkins, and Srinivas Ammisetty worked with Conn to create false medical records to support the disability claims. *Id.* ¶¶ 103–05. After Conn's clients received benefits, Conn submitted Forms 1560 and 1696 to the Social Security Administration ("SSA") to receive his fees for his representation. *Id.* ¶ 72.

On October 11, 2011, Griffith and Carver filed a complaint under the False Claims Act. R. 1; R. 2. The complaint was unsealed on February 19, 2013. R. 18. On December 6,

2

2013, the relators filed a second amended complaint. R. 63. That complaint contains eight counts, and those counts broadly fall into two categories of alleged FCA liability: (1) Conn's clients' applications for Social Security benefits, which Daugherty granted, were false or fraudulent, and (2) Conn's requests for representative fees in those matters were also false or fraudulent. *Id.* ¶¶ 138–42, 148–64.

Conn and the other defendants (taken together as "Conn") first filed a motion to dismiss for lack of subject-matter jurisdiction under the public-disclosure bar, arguing that the relators did not voluntarily provide information to the government before filing suit as required by the FCA. *See* R. 137-1. The Court held that, for claims before March 23, 2010, the public-disclosure bar precluded only Carver's claims because SSA employment policies compelled her disclosures. R. 153 at 12–15, 20–21. Griffith's claims, on the other hand, could proceed because she voluntarily provided the information *after* her resignation from the SSA. *Id.* at 16–20.

Conn then filed a motion to dismiss the second amended complaint, arguing that the Court should dismiss for lack of subject-matter jurisdiction under the public-disclosure bar, and that the Court should dismiss for failure to state a claim under Rule 12(b)(6). R. 146; R. 150; R. 156; R. 158; R. 160; R. 162. The Court denied that motion to the extent that it was based on public-disclosure grounds. *See* R. 176 at 4–17. The Court granted the motion in part, however, on 12(b)(6) grounds. *Id.* at 22–34. The relators had failed to allege fraud with particularity, the Court held, and thus most of their claims had to be dismissed. *Id.* There were only two exceptions: the allegations in Count 1 of the second amended complaint relating to Conn's statements on Forms 1560 and 1696 regarding his resignation from the Veterans Court, and the relators' conspiracy claim in Count 7. *See id.* at 19–22, 34–35. The

3

Court dismissed all the other claims in the second amended complaint—Counts 2, 3, 4, 5, 6, 8, and part of Count 1—but did so without prejudice. *Id.* at 42. The relators then filed a motion asking the Court for leave to file a third amended complaint, R. 190, which the Court granted, R. 206.

## II.

Conn now moves to dismiss again. *See* R. 212. The Court must deny that motion so long as the relators have asserted "some viable legal theory" in support of the claim. *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 444 (6th Cir. 2007). And when determining whether the relators have done so, the Court must accept all well-pled factual allegations as true. *Commer. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

In his motion, Conn challenges Counts 8, 9, and 10 of the Third Amended Complaint, which allege that Conn violated the FCA by presenting false claims related to his representative fees, *see* R. 207 at 71–76; R. 212-1 at 4. In his view, the three "new allegations contained in the Third Amended Complaint do not state a claim upon which relief can be granted and [thus] should be dismissed." *Id.* His challenge this time around is a narrow one. He argues only that those Counts fail to allege that he made a "claim" to the government in the sense that the FCA uses that term. *See* R. 212-1 at 2 ("Relators have once again failed to plead that Conn knowingly presented a false or fraudulent claim for approval to the government under the conditions required under the False Claims Act.").

### A.

As the Court explained in its previous order, the current version of the Act applies to claims that arose after 2009; the previous version of the Act applies to the older claims. *See* R. 176. Under the Act's current terms, a defendant must "knowingly present[] . . . for

4

payment or approval" a "false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A). The Act goes on to define the term "claim" in two ways. First and foremost, the Act defines a "claim" as "any request or demand" that "is presented to an officer, employee, or agent of the United States" for "money or property." *Id.* § 3729(b)(2)(A). Under this definition, it does not matter "whether or not the United States has title to the money or property" that the defendant "request[s] or demands." *Id.* The statute makes that point clear in explicit terms. *Id.*

There is a form that the SSA uses called Form 1560. By using that form—which is titled a "Petition to Obtain Approval of a Fee for Representing a Claimant Before the Social Security Administration"—a claimant's representative asks the government to approve fees for services that he performed on behalf of a claimant. In short, that form is the means by which a representative collects his fees, as this Court has previously explained. *See* R. 176 at 18 ("If the claimant receives disability benefits, the representative collects his fees by submitting Form 1560."). Thus, if Conn submitted Form 1560 to the SSA—asking for representative fees—then he "presented to an officer, employee, or agent of the United States" a "request or demand" for "money or property." 31 U.S.C. § 3729(b)(2)(A). The complaint alleges that Conn did indeed submit Form 1560 to the government. *See* R. 207 at 25. Therefore, the complaint alleges that Conn submitted a "claim," as that term is used in the False Claims Act.

Conn responds in several ways. First, he contends that "[r]epresentative fees in [Social Security] cases are paid from claimants' past-due benefits." R. 212-1 at 4. Because "fees paid to claimants' representatives are paid from funds owned by the claimants," Conn says, "the funds at issue are not 'government' funds." *Id.* But under the definition of

5

"claim" as used in 31 U.S.C. § 3729(b)(2)(A), it does not matter where the money came from. As the Act makes quite clear, "the term 'claim' means any request or demand [for money or property made to a government employee] *whether or not the United States has title to the money or property*." 31 U.S.C. § 3729(b)(2)(A) (emphasis added). Thus, it is quite irrelevant whether Conn's fees were paid out of money belonging to the government, the claimant, or someone else entirely. So long as Conn presented a "request" for payment to a government official, then he made a "claim."

Second, Conn argues that, when "he sought the SSA's certification of his fee requests," he did not truly "present" fee requests to the government. R. 212-1 at 11. "The SSA's certification of fee requests," he says, "is nothing more than an administrative rubber stamp, a ministerial task, akin to a postal worker confirming that a holiday package has sufficient postage." *Id.* At base, Conn's argument seems to be that a defendant does not "present" a request unless the government has discretion in denying it. As far as the Court can tell, however, this argument is a total *non sequitur*. The question is whether Conn "presented" a request for payment to the government. What the government did in response—*i.e.*, whether the government merely "rubber-stamped" the request or instead subjected it to some more-exacting review—has no bearing on the answer to that question.[1] Meanwhile, the statute itself makes no distinction between requests that the government may grant and those that it must grant. Indeed, the statute does not define the term "present" at all. In the absence of a statutory definition, of course, the Court must a give a term its ordinary meaning. *See, e.g.*, *Nix. v. Hedden*, 149 U.S. 304 (1893) (holding that tomatoes are

---

[1] Conn is likewise mistaken to the extent he suggests that, if the Court holds that he "presented" his request, the Court would need to hold that a person makes a "claim" to the government each time he mails a holiday package. To make a "claim," a person must make a request to the government for "money or property." Conn did that when he submitted Form 1560. A yuletide visitor to the post office does not do that.

vegetables, rather than fruits, because tomatoes are vegetables "in the common language of the people"). The ordinary meaning of "present"—"to lay or put before a person for acceptance," Webster's Third New Int'l Dictionary 1793—accurately describes what Conn did with Form 1560. Hence he "presented" the form. And because that form was a "request" to the government for "money or property," it was also a "claim," as that word is used in the Act.

Third, Conn contends that the Third, Fourth, and Eleventh Circuits have interpreted the term "claim" to require a "call upon the government fisc." R. 212-1 at 9; *see also United States ex rel. Nathan v. Takeda Pharmaceuticals N. Am., Inc.*, 707 F.3d 451, 454 (4th Cir. 2013); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999); *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1325–26 (11th Cir. 2009). As for *Takeda*, the court there certainly *said* that a claim must result in "a call upon the government fisc." *Takeda*, 707 F.3d at 454 (internal quotation marks omitted). But that statement was not a holding in that case. At issue in *Takeda* was whether the relators pled with sufficient particularity that the defendant had "presented" a claim to the government. The court did not address what was sufficient to count as a "claim." The same is true for *Hopper*. *See* 588 F.3d at 1331.

As for *Harrison*, that court also said that a "claim" requires a "call upon the government fisc." 176 F.3d at 785. As an initial matter, that statement appears to be pure dicta. The *Harrison* court in fact held that the district court read the Act too narrowly, *id.* at 786—the "call upon the government fisc" language was hardly necessary to the appellate court's holding. Moreover, *Harrison* is from 1999, *i.e.*, before the 2009 amendments to the Act. The Court will discuss the previous version of the Act below, of course, but for these

7

purposes it is enough to say that *Harrison* provides very little guidance as to how to interpret the Act in its revised form. The same is true of *Sanders*, which was decided in 2008. *United States ex rel. Sanders v. Am.-Amicable Life Ins. Co. of Tex.*, 545 F.3d 256 (3d Cir. 2008). Thus, the court's statements in *Sanders*—for example, that the Act "is only intended to cover instances of fraud that might result in financial loss to the Government"—also provide no guidance on how to interpret the revised version of the Act. *Sanders*, 545 F.3d at 259 (internal quotation marks omitted).

Fourth, Conn contends that interpreting the statute like the relators do "would mean that the government fisc requirement has been effectively eliminated from the False Claims Act." R. 222 at 9. But the statute never required a call on the government fisc *if* the request was made to the government *directly*. A call on the government fisc is indeed required if one makes a request for money or property to a "contractor, grantee, or other recipient." 31 U.S.C. § 3729(b)(2)(A)(ii). In that case, the Act requires that the government either "provid[e]" the money or property, *id.* § 3729(b)(2)(A)(ii)(I), or at least "reimburse" the contractor, grantee, or recipient for the money or property demanded, *id.* § 3729(b)(2)(A)(ii)(II). When someone "presents" a request for money to the government directly, however, that is the end of the matter: the person has made a "claim." *Id.* § 3729(b)(2)(A)(i).

One might respond that the "purpose" of the Act is to protect the government fisc, and thus it would be strange if Congress forbade someone to make "claims" that did not cause the government to lose any money. That is one plausible interpretation of the Act's purpose. But another equally plausible interpretation is that Congress likewise wished to forbid someone from making false claims to a government official notwithstanding whether the

government itself would end up footing the bill. After all, even if someone else is paying, government resources are wasted when government employees must review false or fraudulent claims. Congress might well have wanted to prevent such conduct. For these purposes, however, it is enough to say that, whatever Congress truly had in mind, the text Congress enacted into law plainly covers Conn's conduct as alleged in the complaint. And when the text is clear, the Court need not look any further. *See United States v. Ron Pair Enterpr., Inc.*, 489 U.S. 235, 240–41 (1989) (stating that if the text is clear, the court's job is done and its inquiry should end with text).

Finally, Conn cites to legislative history that, in his view, shows that Congress did not intend to "eliminate the 'government fisc' requirement altogether from the Act." R. 222 at 11. As discussed above, Congress did not eliminate the requirement altogether; the requirement still applies if someone makes a request for money or property to a contractor, grantee, or other recipient. More to the point, though, courts do not turn to legislative history unless the plain text of the statute is unclear. For "it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 147 (2000) (internal quotations omitted). "[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc v. United States*, 541 U.S. 176, 183 (2004). Here, the text speaks for itself. If one "presents" a request for money directly to a government employee, then he makes a "claim" for the purposes of the False Claims Act. According to the complaint, that is what Conn did here. Thus, with respect to the post-2009 claims, Conn's motion to dismiss must be denied.

9

B.

With respect to the pre-2009 claims, things are slightly more complicated. As the Court explained in its previous order, the pre-2009 version of the Act applies to those claims. *See* R. 65. The previous version of the Act made someone liable if he "knowingly present[ed], or cause[d] to be presented" a "false or fraudulent claim for payment or approval" to "an officer or employee of the United States Government[.]" 31 U.S.C. § 3729(a)(1) (1999 version). This provision is not materially different than the one in the current version of the statute. But the two versions have materially different definitions—at least semantically—of the term "claim." As discussed above, the current version explicitly defines "claim" in two ways in two different subsections of the statute. *Compare* 31 U.S.C. § 3729(b)(2)(A)(i) *with* 31 U.S.C. § 3729(b)(2)(A)(ii). The old version of the statute defined claim in a single sentence, which reads as follows:

> For purposes of this section, "claim" includes any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property of the money or property which is requested or demanded.

31 U.S.C. § 3729(c).

In Conn's view, the terms of this section demonstrate that a "request or demand . . . for money or property" is not a "claim" unless the government has some skin in the game, *i.e.*, unless the government either provides the money or property demanded or will at least reimburse the money or property demanded. Other courts have interpreted the statute in the same way. *See, e.g.*, *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1325–26 (11th Cir. 2009); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999).

The fatal flaw in these decisions, however, is that they fail to take into account the entirety of the text in their analysis. Section 3729(c) in the old version of the Act merely makes clear that one can make a "claim" without presenting anything to the government directly. The proof is the opening language of the section, which says that the term "'claim' *includes*" demands made to contractors or grantees or other recipients under certain conditions, and then goes on to define those conditions. What the section does *not* say, however, is that the term "claim" includes *only* demands made to contractors, grantees, or other recipients. What about claims made to the government directly, one might ask? To that particular question, Section 3729(c) provides no answer. The reason is that this section provides only a *partial* definition of the term "claim." The section does say that some things are definitely claims—*e.g.*, any request for money or property made to a contractor or grantee so long as the government provides the money or property. But the definition provided does not provide a complete definition of "claim"—it does not "cover the field," as it were. And thus to know what a "claim" is when the request is *not* made to a contractor, grantee, or other recipient, we must turn to the ordinary meaning of the word "claim." *See Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997) (Scalia, J.) ("[I]n the absence of an indication to the contrary, words in a statute are assumed to bear their ordinary, contemporary, common meaning." (internal quotation marks omitted)). The ordinary meaning of the word "claim" is "[a] demand for money, property, or a legal remedy to which one asserts a right." Black's Law Dictionary 301 (10th ed. 2014). And thus the Court must give that word that meaning.

For example, assume a statute imposed a tax on "candy." In the definitions section, the statute clarified that "[f]or the purposes of this section, the term 'candy' includes any

11

popcorn which is sold at a candy store." If a grocer refused to pay the tax on licorice sold at his grocery store—arguing that he was not selling popcorn at a candy store—he would be laughed out of court. The reason, of course, is that the statute says nothing about where *licorice* must be sold to count as "candy"—it specifies only where *popcorn* must be sold—and meanwhile the ordinary definition of "candy" certainly includes licorice. Things would be different, of course, if the statute said that "[f]or the purposes of this section, the term 'candy' is defined only as popcorn which is sold at a candy store." Legislators are of course at liberty to define terms as they please. In our hypothetical statute, however, the legislators have chosen only to supplement the usual definition of the term, rather than replace the usual definition entirely. And the same is true of the statute at issue here.

Moreover, Conn's reading of the definition provision of the statute would make nonsense out of its operative provision. Recall that the statute forbids a person to knowingly present a false "claim" to "an officer or employee of the United States Government." On Conn's reading of the statute, however, a request for money or property is only a "claim" if it is made to a "contractor, grantee, or other recipient" (and if the government provides or reimburses the money or property). So if one presents a request for money or property to a government official, one, by definition, has not made a request for money or payment to a contractor, grantee, or other recipient. Thus, under Conn's reading, there would be no way to violate 31 U.S.C. § 3729(a)(1). One presents a claim either to a government official or a contractor, grantee, or other recipient—not both.

One might respond that it would be strange to give "claim" its ordinary meaning—that is, any request for money or payment *simpliciter*. After all, the False Claims Act is not a common-law fraud statute. *See Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S.

12

662, 672 (2008) (rejecting the idea that the FCA is an "all-purpose antifraud statute"). But that response ignores the other provisions of the Act. Of course the Act does not make it a crime to make *any* false or fraudulent claim. Instead, the Act provides that a false or fraudulent claim is illegal under three circumstances: if a person "conspires to defraud the Government" by "getting a false or fraudulent claim allowed or paid"; if a person knowingly uses "a false record or statement" to "get a false or fraudulent claim paid or approved by the government"; or—as relevant here—if a person "knowingly presents, or causes to be presented, to an officer or employee of the United States Government" a "false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)–(3) (1999 version). Those other limitations prevent the False Claims Act from being read to forbid all frauds.

In summary, the previous version of the Act forbids a person to "present" to an "employee of the United States" a "false or fraudulent claim for payment or approval." *Id.* § 3729(a)(1). The ordinary definition of the term "claim" is "[a] demand for money." According to the complaint, Conn certainly "presented" a "[a] demand for money" to an "employee of the United States." And nothing in the Act requires that the "demand for money" must be a demand for *government* money when the demand is made to a government employee directly—rather than to a contractor, grantee, or other recipient. Thus, the complaint states a valid claim even as to pre-2009 conduct.

13

Accordingly, Conn's motion to dismiss is **DENIED**.

This the 14th day of March, 2016.

Signed By:
*Amul R. Thapar* AT
United States District Judge