UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| JENNIFER L. GRIFFITH, et al., | ) |
| Plaintiffs, | ) Civil No. 11-157-ART-EBA |
| v. | ) |
| ERIC C. CONN, et al., | ) **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

The False Claims Act ("FCA") gives the government 60 days to elect to intervene and proceed with an action filed by a private person under the FCA. 31 U.S.C. § 3730(b)(3). But the FCA also allows the government to intervene at a later date upon a showing of "good cause." *Id.* § 3730(c)(3). The government originally chose not to intervene in this case. R. 14. Three years later, though, the government now moves to partially intervene. R. 223. As grounds for its untimely intervention, the government states that: (1) it has uncovered new evidence since the government declined to intervene, (2) it has remained actively involved in this case, and (3) intervention will help vindicate the public's interest in the resolution of this case. *See id.* Moreover the relators and the defendants acknowledge that they will not be prejudiced by the government's untimely intervention. Because the government's justifications for its late intervention are substantial, and such an intervention will not unfairly prejudice the other parties, the government has shown good cause to intervene. Accordingly, the government's motion to partially intervene will be granted.

I.

As the Court's previous opinions include a full recitation of the facts, a summary here suffices. *See* R. 206 at 1–3; R. 176 at 1–3; R. 153 at 2–5. Relators Jennifer Griffith and Sarah Carver allege that Social Security lawyer Eric Conn conspired with Administrative Law Judge ("ALJ") David Daugherty to manipulate the assignment of disability cases and grant disability benefits to undeserving claimants. As part of their scheme, Conn would notify Daugherty when his clients filed claims, R. 63 ¶¶ 52–54, and Daugherty would then assign himself those cases, *id.* ¶¶ 62–65. The relators list several examples of cases that Daugherty allegedly misappropriated. *See id*. ¶¶ 70, 71. Daugherty would then conduct "sham proceedings" or in some cases simply grant benefits without a hearing. *Id.* ¶¶ 73–83. After Conn's clients received benefits, Conn submitted Forms 1560 and 1696 to the Social Security Administration ("SSA") to receive his fees for his representation. *Id.* ¶ 72. Griffith and Carver also allege that doctors David P. Herr, Bradley Adkins, and Srinivas Ammisetty worked with Conn to create false medical records to support the disability claims. *Id.* ¶¶ 103–05.

On October 11, 2011, Griffith and Carver filed a complaint under the False Claims Act. R. 1; R. 2. The complaint was unsealed on February 19, 2013. R. 18. On December 6, 2013, the relators filed a second amended complaint. R. 63. That complaint contains eight counts, and those counts broadly fall into two categories of alleged FCA liability: (1) allegations that Conn's clients' applications for Social Security benefits, which Daugherty granted, were false or fraudulent, and (2) allegations that Conn's requests for representative fees in those matters were false or fraudulent. *Id*. ¶¶ 138–42, 148–64.

Conn and the other defendants (collectively "Conn") first filed a motion to dismiss for lack of subject-matter jurisdiction under the public-disclosure bar, arguing that the relators did not voluntarily provide information to the government before filing suit as required by the FCA. *See* R. 137-1. The Court held that, for claims before March 23, 2010, the public-disclosure bar precluded only Carver's claims because SSA employment policies compelled her disclosures. R. 153 at 12–15, 20–21. Griffith's claims, on the other hand, could proceed because she voluntarily provided the information *after* her resignation from the SSA. *Id.* at 16–20.

Conn then filed a motion to dismiss the second amended complaint, arguing that the Court should dismiss for lack of subject-matter jurisdiction under the public-disclosure bar, and that the Court should dismiss for failure to state a claim under Rule 12(b)(6). R. 146; R. 150; R. 156; R. 158; R. 160; R. 162. The Court denied that motion to the extent that it was based on public-disclosure grounds. *See* R. 176 at 4–17. The Court granted the motion in part, however, on 12(b)(6) grounds. *Id.* at 22–34. The relators had failed to allege fraud with particularity, the Court held, and thus most of their claims had to be dismissed. *Id.* There were only two exceptions: the allegations in Count 1 of the second amended complaint relating to Conn's statements on Forms 1560 and 1696 regarding his resignation from the Veterans Court; and the relators' conspiracy claim in Count 7. *See id.* at 19–22, 34–35. The Court dismissed all the other claims in the second amended complaint—Counts 2, 3, 4, 5, 6, 8, and part of Count 1—but did so without prejudice. *Id.* at 42. The relators then filed a motion asking the Court for leave to file a third amended complaint, R. 190, which the Court granted, R. 206. Conn moved to dismiss, R. 212, and the Court denied that motion, R. 236.

II.

The United States has now filed a motion to partially intervene. R. 223. The False Claims Act gives a relator the right to file a civil action on behalf of the United States itself. 31 U.S.C. § 3730(b)(1) ("The action shall be brought in the name of the Government."). After the relator files the complaint, the government has 60 days to decide whether it wishes to intervene. *Id.* § 3730(b)(2). The government may "proceed with the action, in which case the action shall be conducted by the Government." *Id.* § 3730(b)(4)(A). Or the government may "notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action." *Id.* § 3730(b)(4)(B). "If the Government [initially] elects not to proceed with the action," the court "may nevertheless permit the Government to intervene at a later date upon a showing of good cause." *Id.* § 3730(c)(3).

The FCA does not define "good cause." *See id.* As such, the Court must look at "the language of the statute itself" to determine if its meaning is plain. *U.S. Dep't of the Treasury v. Fabe*, 508 U.S. 491, 500 (1993). A court determines the plain meaning by examining "the language and design of the statute as a whole." *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000) (internal quotations omitted).

"Good cause" is "a cause or reason sufficient in law." Webster's Third New Int'l Dictionary 978 (2002); *see also* Black's Law Dictionary 266 (10th ed. 2014) (defining "good cause" as "[a] legally sufficient reason"). Thus, the plain meaning of "good cause" is dependent on the FCA itself. But the FCA offers no guidance as to what cause or reason is sufficient to be "good cause." *See* 31 U.S.C. § 3730. As such, the meaning of "good cause" within the FCA is unclear.

4

And to those who say, when the statute is unclear look at the legislative history (a debate not worth entering here), that too provides no guidance.  *See* S. Rep. No. 99-345, at 26–27 (1986).  The legislative history explains that limiting the government to 60 days to intervene could be detrimental to the government's interests.  *Id.* at 26.  In support of this reasoning, the legislative history states that "new evidence discovered after the first 60 days of the litigation could escalate the magnitude or complexity of the fraud, causing the Government to reevaluate its initial assessment or making it difficult for the *qui tam* relator to litigate alone."  *Id.*  Some courts have read this language to mean that "good cause" requires a showing of new evidence.  *See U.S. ex rel. Hall v. Schwartzman*, 887 F. Supp. 60, 62 (E.D.N.Y. 1995); *United States v. Aseracare, Inc.*, 2012 WL 5289475, at *3 (N.D. Ala. Oct. 24, 2012).  The legislative history continues, however, by stating that, "[i]n those situations where new and significant evidence is found *and* the Government can show 'good cause' for intervening," a court may allow the government to intervene.  S. Rep. No. 99-345, at 26–27 (1986) (emphasis added).  This suggests just the opposite—that "good cause" does not require a showing of new evidence.[1]  Thus, unsurprisingly, the legislative history provides very little guidance.

Whatever "good cause" means under the FCA, however, "good cause" must require the government to provide some justification for its untimely intervention.  *See* Webster's Third New Int'l Dictionary at 978; Black's Law Dictionary at 266.  Such a requirement was

---

[1] Conn argues that the legislative history shows that the government actually needs to satisfy two elements to intervene: good cause as well as new and significant evidence. R. 232 at 7. But Conn misunderstands the purpose of turning to the legislative history.  Courts may use legislative history only to help clarify the meaning of unclear or ambiguous terms in statutes, not to add new words or requirements into a statute. *See Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*, 474 F.3d 365, 371–72 (6th Cir. 2007) ("Only if a statute is 'inescapably ambiguous' should a court look to other persuasive authority in an attempt to discern legislative meaning."). And the FCA requires the government to show only good cause for untimely intervention, not new and significant evidence. *See* 31 U.S.C. § 3730(c)(3).

not created just for the sake of limiting government intervention. The primary purpose of the FCA was to protect the government from fraud, *see U.S. ex rel. Marcus v. Hess*, 317 U.S. 537, 547, 551 (1943), so the government should be able to intervene when necessary to protect its own interests. This is why the government can intervene in the first 60 days without having to show any cause. *See* 31 U.S.C. § 3730(b)(2).

Instead, the purpose of the "good cause" requirement for late intervention must be to provide protection to relators and defendants from unfair prejudice due to an untimely intervention from the government. *See U.S. ex rel. Stone v. Rockwell Intern. Corp.*, 950 F. Supp. 1046, 1048–49 (D. Colo. 1996) ("[T]he 'good cause' requirement of § 3730(c)(3) was intended to protect the interests of the relator."). Imagine, for example, a scenario in which the government initially opted not to intervene. Thereafter, the defendants spent hundreds of hours and hundreds of thousands of dollars pouring through discovery and litigating the case. Then, three years into the litigation, the government decides to intervene, causing some discovery to be repeated, requiring new discovery, and potentially requiring relitigation of some issues. Permitting intervention without a very strong justification from the government would therefore unfairly prejudice the defendants in such a scenario. Thus, it seems that "good cause" requires balancing the government's justifications for an untimely intervention against any possible prejudice to the relators and defendants caused by such intervention. If the government's justification outweighs any prejudice to the other parties, then the government has shown "good cause" to intervene.

Here, the government provides several justifications for why the Court should allow its untimely intervention. First, the government states that its motion to intervene is based on new evidence that has been uncovered since the government originally declined to intervene.

6

R. 223 at 7–8. Specifically, the government points to: (1) testimony before the Senate Committee by two physicians who provided medical reports to Conn; (2) written declarations of two of Conn's former employees about the creation of medical records submitted to the SSA; and (3) the SSA's Officer of Inspector General's identification of claims filed that allegedly contain falsely certified and fraudulently submitted evidence. *Id.* at 5. So new evidence has come to light since the government chose not to intervene.

Second, the government points out that it has remained an active participant in this case since it declined to intervene. *Id.* at 3–5. For example, the government filed briefing on the public-disclosure bar and has attended the hearings and status conferences in this case. *Id.* at 4. Moreover, while the government remained actively involved, the government has also continued to investigate the relators' claims. *Id.* So the government has maintained an interest in the litigation and stayed involved in order to protect that interest. Also, the government's continued involvement means that the government will not need time to play catch up before litigation can continue.

Finally, the government states that its intervention will help vindicate the public's interest. Specifically, the public has an interest in ensuring: (1) that Social Security Disability Insurance ("SSDI") and the Supplemental Security Income ("SSI") Programs are administered with transparency and integrity, and (2) that SSDI and SSI claimants have ethical and fair representation in their dealings with the SSA. *Id.* at 6–7. Both of these interests are at stake in this case due to Conn's alleged fraudulent conduct against the SSA. And the government's participation in this case will help vindicate these public interests. *See Stone*, 950 F. Supp. at 1049 ("This civil action provides the appropriate forum for a public inquiry into the management of this important [Department of Energy] defense facility

and participation in it by the government will add significantly to the completeness and fairness of any trial."). The government has ample resources to prosecute this case thoroughly. Moreover, the government will prosecute the case vigorously because the government was the victim of the fraud and the government has a strong incentive to prevent this type of fraud in the future. Taken as a whole, the government's justifications seem substantial enough to justify the government's untimely intervention.

The question, then, is whether any prejudice to the defendants or the relators outweighs these justifications. The answer is no. The relators consent to the intervention and join the government's motion to intervene, so intervention will not prejudice the relators. R. 223 at 8; *see also* R. 238-1 (relator's statement of interest in intervention). And the defendants admit that intervention will not prejudice them either, R. 232 at 6, as little discovery has occurred in the case up to this point. R. 223 at 8; *see* R. 206 at 5 (order granting relators' motion for leave to file third amended complaint because "little discovery ha[d] occurred thus far"). Moreover, the government has continued its involvement in this case and notified the defendants that its investigation was ongoing, so intervention will not cause the defendants any unfair surprise. R. 223 at 8. As such, the Court finds that the relators and the defendants will not suffer any prejudice due to the government's late intervention in this case.

The government has provided three justifications for its untimely intervention. And this intervention will not prejudice any of the parties. Thus, the Court finds that the government has shown "good cause" to intervene in this action. *See* 31 U.S.C. § 3730(c)(3).

Accordingly, it is **ORDERED** that:

(1) The government's motion to partially intervene for good cause, R. 223, is **GRANTED**.

(2) The relators' motion for leave to file a statement of interest, R. 238, is **GRANTED**. The Clerk of the Court shall docket the relators' statement of interest, R. 238-1.

(3) The government's unopposed motion to partially amend the scheduling order, R. 240, is **GRANTED**. The government **SHALL PROVIDE** its Rule 26(a)(1) disclosures to the parties by **Friday, April 29, 2016**.

This the 22nd day of April, 2016.

Signed By:
*Amul R. Thapar* AT
United States District Judge