UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

| | |
|---|---|
| JENNIFER L. GRIFFITH, *et al.*, <br><br> Plaintiffs, <br><br> V. <br><br> ERIC C. CONN, *et al.*, <br><br> Defendants. | CIVIL NO. 7:11-CV-157-KKC-EBA <br><br><br> **OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court pursuant to relators' motion for summary judgment against defendant David B. Daugherty (DE 319). Specifically, the relators' move for judgment on Counts VII, VIII, IX, and X of the third amended complaint (DE 207). For the following reasons, relators' motion for summary judgment (DE 319) is **GRANTED IN PART** and **TAKEN UNDER ADVISEMENT** in part. The motion is **GRANTED** as to defendant Daugherty's liability on Counts VII, VIII, IX, and X of the third amended complaint. The Court **RESERVES** ruling on the issue of damages.

## I.  INTRODUCTION

This case has a long and complex procedural history. Previously, the Court has set the stage as follows:

> This story has been told many times. Griffith and Carver allege that Eric Conn, a social security attorney and local celebrity, and David Daugherty, an administrative law judge, conspired to defraud the government. The scheme was simple: Conn would bring social security cases on behalf of people seeking disability benefits, Daugherty would assign those cases to himself, and Daugherty would grant the benefits irrespective of the merits. Conn would then submit claims to the Social Security Administration (SSA) to collect attorney's fees for bringing those cases. Those submissions, according to the plaintiffs, violated the False Claims Act ("FCA").

1

(DE 274 at 1-2) (internal citations omitted). Griffith and Carver ("relators") originally brought this action through the qui tam statute in 2011. (DE 2). After preliminary review of the case, the government decided not to intervene, and Griffith and Carver proceeded in prosecution of the case. Several years later, the government partially intervened, but only as to the Conn defendants. (DE 223; 252). Important to the course of this litigation is that fact that both Conn and Daugherty have been pursued criminally for actions related to the ones at issue in this case. Conn pleaded guilty in his parallel criminal case, and in turn, conceded liability on Counts I, XIII, and IX of this litigation. *See* (DE 309; 310 at 1).

Griffith and Carver now move for summary judgment against defendant Daugherty, pointing out that he too has now pleaded guilty in his parallel criminal case. *See United States v. Daugherty*, No. 5:17-CR-00066-DCR (May 12, 2017). Specifically, Daugherty has admitted to two counts of receiving gratuities in violation of 18 U.S.C. § 201(c)(1)(B). *See id.* at (DE 15).

As a result of the parallel criminal cases, there is a large amount of evidence that has been admitted by Daugherty and Conn, and is now offered to prove summary judgment on the relators' claims against Daugherty. Important in those admissions is illumination on the fraudulent scheme existing between Daugherty and Conn. Defendant Daugherty has not responded to the relators' motion for summary judgment, despite a specific request by the Court, and the evidence is uncontested.

In or around October 2004, Daugherty solicited Conn for money, remarking that Conn was the beneficiary of many of Daugherty's decisions on disability claims. (DE 319-6, Attach. A at 8). Eventually, Daugherty and Conn setup a monthly payment system, in which Conn would pay Daugherty $400 per favorable decision on Conn's cases for disability benefits. *Id.* at 9. As a result of being financially incentivized, Daugherty began to seek out and self-assign Conn's cases or reassign them from other Administrative Law Judges to himself. (DE

319-4, Attach. A at 3). Daugherty also began making monthly phone calls to the Conn Law Firm, providing the identity of claimants for whom Daugherty intended to award benefits, and specifically identifying the type of medical evidence, whether evidencing a physical or mental impairment, that Conn should submit to support favorable decisions. *Id.* Conn, using several medical professionals, fabricated documentation, including physical pre-completed Residual Functional Capacities, which he submitted to Daugherty via interstate facsimile or wire transmissions from the Conn Law Firm to the Huntington Office of Disability Adjudication and Review ("ODAR"). (DE 319-6, Attach. A at 2-7, 10-11).

In or around January 2008, Daugherty contacted Conn by telephone and confronted Conn about the repetitive submission of some of the fabricated documentation. (*Id.* at 12). Daugherty advised Conn, "this isn't going to work," and instructed Conn to create and submit a wider variety of physical pre-completed Residual Functional Capacities ("RFCs'). *Id.* During that same phone call, Daugherty criticized the quality of the physical pre-completed RFCs, remarking, "who's filling these out for you? It must be an eighth grader writing these for you." *Id.* Conn discontinued using the original five versions of the physical pre-completed RFCs, created ten new versions, and submitted these newer versions to Daugherty in support of disability determinations. *Id.* Like their predecessors, the forms reported limitations that were considered disabling by the SSA, irrespective of the claimant's actual ability to perform work. *Id.*

Daugherty admits that between October 2004 and April 2011, he received more than $609,000 from Conn in cash payments. (DE 319-4, Attach. A at 5). Further, in Conn's cases wherein Daugherty rendered favorable decisions and Conn paid illegal gratuities to Daugherty, Conn ultimately received at least $7,100,000 in representative fees from the SSA.

*Id.* Finally, those favorable decisions obligated the Social Security Administration to pay more than $550,000,000 in lifetime benefits to claimants represented by Conn. *Id.* at 5-6.

## II. ANALYSIS

### a. Legal standards

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden and must identify "those portions of the pleadings...which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citation omitted).

Once the movant meets the initial burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In this Court's consideration of the motion, "the evidence should be viewed in the light most favorable to the non-moving party." *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 255).

Summary judgment is not warranted simply because the non-moving party has failed to respond to the motion within the applicable time limit. *See Miller v. Shore Fin. Servs., Inc.*, 141 F.App'x 417, 419 (6th Cir. 2005). "When a non-moving party fails to respond…the district court must, at minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Id.* (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)).

### b. Liability Under the False Claims Act, 31 U.S.C. §§ 3729(a)(1)(A), et seq.,

At the outset, the Court notes that the relators have avoided two common pitfalls of FCA litigation: the particularity requirement and the public disclosure bar. *See* Fed. R. Civ. Pro. 9(b); *see also* 31 U.S.C. § 3730(e)(4)(A). Here, the Court has previously found that the relators

4

properly described the overall fraudulent scheme between Conn and Daugherty, and pointed with specificity to individual claims that were fraudulently submitted via that scheme. *See* (DE 206 at 7; DE 207 at 47-48). The Court has also previously found that the relators are independent sources of knowledge and substantially contributed to the complaint, meaning their action is not precluded by the public disclosure bar. (DE 206 at 9).

To state a claim under the FCA, the plaintiff must sufficiently plead:

> [1] that the defendant [made] a false statement or create[d] a false record [2] with actual knowledge, deliberate ignorance, or reckless disregard of the truth or falsity of the information; [3] that the defendant … submitted a claim for payment to the federal government; … and [4] that the false statement or record [was] material to the Government's decision to make the payment sought in the defendant's claim.

*U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 408 (6th Cir. 2016).

Daugherty's significant involvement in the fraudulent scheme detailed above is sufficient to attach liability under the FCA. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 792 (4th Cir. 1999) ("[T]he language of the False Claims Act statute does not anywhere state that False Claims Act liability depends upon a defendant's status as a recipient or beneficiary of the fraudulently induced contract. All that is required is the submission of a false claim"); *see also U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.,* 685 F.Supp.2d 129, 136 (D.D.C. 2010) ("An argument that the presentation of the claims was the work of another is unavailing as a means to avoid liability under the False Claims Act") (quoting *U.S. ex Rel. Pogue v. Diabetes Treatment Centers of America, Inc.,* 238 F.Supp.2d 258, 266 (D.D.C. 2002)); *see also U.S. v. Raymond & Whitcomb Co.,* 53 F.Supp.2d 436, 445 (S.D. N.Y. Jun. 19, 1999) ("False Claims Act liability attaches not only to the actual

maker of the false statement, but also to any person who knowingly assisted in causing the government to pay claims which were grounded in fraud")(internal citations omitted).[1]

Given the record before the Court, it is clear that the relators have carried the burden in reference to Counts IX and XIII of the third amended complaint. It has been established that Daugherty both "knowingly present[ed], or caus[ed] to be presented, a false or fraudulent claim for payment or approval," and that Daugherty "knowingly [made], us[ed], or caus[ed] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)-(B). Daugherty caused the creation of false documents, at minimum, when he instructed Conn to create and submit a wider variety of pre-completed RFCs that reported disabling limitations irrespective of the claimant's abilities. (DE 319-6, Attach. A at 12). Daugherty then used those fraudulent documents as the basis for his rulings—orders that were presented to the SSA for payment and deemed a claimant eligible for benefits. Thus, it is clear that Daugherty also caused fraudulent claims to be presented. (DE 319-4, Attach. A at 5) ("In Conn's cases wherein [Daugherty] rendered favorable decisions and Conn paid illegal gratuities to [Daugherty], Conn ultimately received at least $7,100,000 in representative fees from the SSA…[and] those favorable decisions obligated the SSA to pay more than $550,000,000 in lifetime benefits to Claimants represented by Conn"). It is clear from his agreement with Conn that these violations were done knowingly—specifically with the knowledge that the pre-completed RFCs were fraudulent, and that the SSA pays benefits when presented with favorable rulings by ALJs such as Daugherty. *See* 31 U.S.C. §

---

[1] In 2009, Congress passed the Fraud Enforcement and Recovery Act, Pub.L. No. 111-21, 123 Stat. 1617 (2009), which renumbered and slightly altered several provisions. Under the previous iteration, the now named § 3729(a)(1)(B) incorporated an intent requirement—and thus required that the defendant intend that the false record or statement be material to the government's decision to pay or approve the false claim. *See Allison Engine Co., v. United States ex rel. Sanders,* 553 U.S. 662, 665, 128 S.Ct. 2123, 2126 (2008). Application of this standard to the conduct of Conn and Daugherty that occurred prior to the 2009 legislation would not change the Court's findings. There is ample evidence showing that this was exactly Daugherty's intent, as to both the fabrication of documentation and the submission of claims based on his resulting opinions—for instance, Daugherty was paid by Conn for each claim that he ordered be paid out by the SSA.

3729(b)(1). The false documents, and in turn the favorable rulings that Daugherty knew to be premised on those false documents, influenced the SSA's payment of benefits, and were therefore material. *See id.* at § 3729(b)(4). Finding the elements satisfied as to Counts XI and XIII of the third amended complaint, the Court grants summary judgment.

As to Count VII, the relators have shown that Daugherty conspired to commit the above violations of the FCA. Daugherty's own admissions establish an agreement between himself and Conn that spanned years, and ultimately aimed at creating favorable rulings to be paid out by the SSA, irrespective of eligibility and based upon fraudulent documentation. *See* (DE 319-4, Attach. A at 3-4; DE 319-6, Attach A. at 12-13). The Court finds that the relators have shown there is no genuine dispute of material fact as to Daugherty and Conn's "plan or agreement 'to commit a violation of' one or more of the FCA subsections." *United States ex rel. Ibanez v. Bristol-Myers Squibb Company,* 874 F.3d 905, 917 (6th Cir. 2017) (quoting 31 U.S.C. § 3729(a)(1)(C)).[2] As such, summary judgment on Count VII is warranted.

Finally, Count X of the third amended complaint alleges that the defendants, including Daugherty, caused the submission of false claims by virtue of Conn's payment of bribes to Daugherty. (DE 207 at 75). Relators cite *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943), to lend support to the idea that bribes to Daugherty, as a fraudulent action, tainted all claims submitted to the SSA. (DE 319-1 at 45-47).

Payments made to Daugherty violated Social Security regulations that forbid such conduct. *See* 20 C.F.R. §§ 404.1740(c)(6) and 416.1540(c)(6). And if agents of the SSA had

---

[2] While the current iteration of the Act requires a showing that Daugherty conspired to commit a violation of § (a)(1), prior to 2009 the Act also required that the defendants "agreed that the false record or statement would have a material effect on the Government's decision to pay the false or fraudulent claim." *See Allison Engine Co., Inc., v. U.S. ex rel. Sanders,* 553 U.S. 662, 672-73, 128 S.Ct. 2123, 2130-31 (2008) (discussing the Act's previous language and application to those who "conspire to defraud the government by getting a false or fraudulent claim allowed or paid"). Relators have satisfied their burden under both standards.

known of the payments made to Daugherty, the SSA would not have paid out benefits on the claims, but instead would have been required to immediately redetermine the claimants' eligibility. *See* 42 U.S.C. § 1383(e)(7)(A)(i) ("The Commissioner of Social Security shall immediately redetermine the eligibility of an individual for benefits…if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits"). Since submission of valid claims (*i.e.* those free of bribery) is an obvious requirement to obtain payment from the SSA, Conn and Daugherty impliedly certified their claims validity upon their presentment to the SSA. *See Chesbrough v. VPA, P.C.,* 655 F.3d 461, 468 (6th Cir. 2011) (finding "implied certification" theory of liability "can attach if the claimant violates its continuing duty to comply with the regulations on which payment is conditioned"). Here, bribes given to and accepted by Daugherty permeated the entire scheme, including the favorable decisions rendered by Daugherty. The bribes were material since the promise of bribe money was a first and fraudulent step in a scheme inducing the government to erroneously pay out money on fraudulent claims. Those bribes thus serve as a proper basis for liability under the FCA. *See United States ex rel. Marcus v. Hess,* 317 U.S. 537, 542-544, 63 S.Ct. 379, 383-384, 87 L.Ed. 443 (1943). Summary judgment on Count X is warranted.

**c. Damages**

This case is procedurally complex, in that the United States has previously intervened and been awarded a judgment against the Conn defendants. (DE 314). The relators now argue that the damage of the conspiracy has already been calculated at over 31 million dollars during a previous entry of summary judgment against the Conn defendants, and that judgment in that amount should now be awarded against Daugherty. Even after request by the Court, defendant Daugherty has not responded as to his liability or potential damages.

8

The Court notes that questions remain regarding damages as to the respective defendants and the most appropriate way to enter judgment in this case. As such, the Court will schedule a status conference to discuss these concerns.

## CONCLUSION

Accordingly, it is hereby **ORDERED** that:

(1) The relators' motion for summary judgment (DE 319) is **GRANTED IN PART** and **TAKEN UNDER ADVISEMENT** in part. The motion is **GRANTED** as to defendant Daugherty's liability on Counts VII, VIII, IX, and X of the third amended complaint. The Court **RESERVES** ruling on the issue of damages;

(2) A telephonic status conference will be scheduled by a separate order.

Dated March 20, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY